## WESTERN UNION TELEGRAPH CO. v. SEGUIN FARMERS' UNION GIN CO.
### (No. 6848.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1922. Rehearing Denied Jan. 17, 1923.)

**1. Evidence ⊂⇒18—Common knowledge that cotton price fluctuates.**

It is a matter of common knowledge that the price of cotton constantly fluctuates from day to day, often with disastrous results to those dealing in that product.

**2. Telegraphs and telephones ⊂⇒37(1)—Ordinary care required in delivering telegram.**

It was a duty of a telegraph company to use ordinary care in transmitting and delivering a telegram, where informed that failure to transmit and deliver would result in sender's loss of a sale of cotton.

Appeal from District Court, Guadalupe County; C. K. Quin. Judge.

Action by the Seguin Farmers' Union Gin Company against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Goeth, Webb & Goeth, of San Antonio, and A. J. Wirtz, of Seguin, for appellant. Dibrell & Mosheim, of Seguin, for appellee.

SMITH, J. Appellee sued appellant for $2,986.33, damages alleged to have been sustained by appellee on account of the negligent failure of appellant to deliver a message concerning a cotton transaction. The cause was submitted to a jury upon special issues, upon the answers to which a judgment was rendered in favor of appellee for $1,780.99. The transaction occurred in September, 1920.

Appellee, gin company, was engaged in selling cotton, and Anderson, Clayton & Co., cotton buyers at Houston, was apparently its principal customer. The two companies were dealing with each other under a written contract, which contained the following stipulations among others:

"That the party of the first part [the buyers] agrees to furnish to the party of the second [the sellers] limits, on a basis of middling with agreed differences for other grades, for cotton baled in round lap bales on the Clayton round bale press, from date until the first day of March, 1918, and from year to year thereafter, under the regulations and conditions hereinafter set forth.

"Limits: Party of the first part agrees to furnish said limits daily during the continuance

of this agreement if so requested by the party of the second part. It is understood that said limits for said round bale cotton will be based on said cotton f. o. b. cars at Seguin, Texas."

At the beginning of the 1920–21 cotton season the gin company, as permitted in the contract, requested the Clayton-Anderson concern to furnish it with daily telegraphic quotations, which was done in code messages, and the quotation wired the gin company on September 21, 1920, when translated, read:

"Your Clayton bale limit, basis middling subject to terms of our cotton agreement and in force until eight p. m. today is twenty-seven ninety-five cents under lading October 5th."

Acting upon this quotation, the gin company delivered a properly addressed message to the telegraph company's agent at Seguin at about 7 o'clock p. m., the same day, for transmission to the Anderson-Clayton Company at Houston. This message, as were all telegraphic communications between the concerns, was in code, which when translated read:

"We sell you today in Clayton round bales under the terms of cotton agreement existing between us two hundred at 27.95 cents."

This message was never delivered to Anderson, Clayton & Co., but, assuming it had been delivered in due time, the gin company a day or two later shipped the 200 bales of cotton to the buyer at Houston, to whom it forwarded bill of lading with draft attached. This draft was presented to Anderson, Clayton & Co. on September 27th, which was the first intimation that concern had of the proposed sale to it, the draft was refused, and one of its officers called the president of the gin company by telephone, and, after explaining the circumstances to the latter, was authorized by him to take the cotton on that day's market, which was done. As the market had declined heavily from September 21st to September 27th, the day the cotton was sold, appellee suffered a substantial loss in the transaction. Subsequently the gin company brought this suit against the telegraph company for damages in the sum of the difference between the quoted price of the cotton on September 21st and the price at which it was sold on the 27th, alleging that the loss occurred through the negligent failure of the defendant to transmit and deliver the gin company's message to the Anderson-Clayton Company.

In answer to special issues submitted to them the jury found: (1) That the telegraph company was guilty of negligence in failing to transmit and deliver the message in question to Anderson, Clayton & Co. at or before 8 p. m. on the day it was sent; (2) that the telegraph company's agent, with whom the message was filed for transmission, knew the meaning of it at the time it was filed with him, and was informed at that time that it "related to the sale of cotton, and that, unless transmitted and delivered by 8 o'clock p. m. of that date, plaintiff would lose the sale of the cotton"; (3) that by reason of the failure of the defendant to transmit and deliver the message the plaintiff sustained damages in the sum of $1,780.99.

In its first, second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and thirteenth assignments of error appellant complains of the insufficiency, or questions the effect, of the evidence to support the verdict and judgment. We have considered these assignments in detail, and without undertaking to set out the evidence relating to them we hold that the testimony was sufficient to sustain the verdict and judgment. Accordingly we overrule all the assignments mentioned.

[1] The buyer and seller were, as stated, dealing with each other in virtue of the provisions of a written contract, which had been in force for several years, and under which thousands of bales of cotton had been sold and purchased between them. As usual, the buyer telegraphed the daily quotation to the seller at Seguin, and also as usual, when it desired to avail itself of these quotations, that company filed with the telegraph company a message to the Houston concern that it was that day "selling" the latter a specified number of bales of cotton at the specified price given in the quotation. Now appellant contends that the sending of the quotation was a definite offer to buy, and that when the seller filed its message with the telegraph company for transmission it definitely accepted that offer, thereby finally closing an absolute contract binding alike upon both parties; that as the contract between the parties was completed and binding on both upon the mere filing of the message, the failure of the telegraph company to transmit and deliver the message to the buyer could not affect the respective liabilities of the parties to the contract, or injure the seller, whose remedy would be against the buyer, and not the telegraph company. Whether or not this would be true in the abstract we need not decide. But it is not the case made here, for the reason that in the course of several years' dealing under this contract the parties thereto had established their own mutual construction of its provisions, under which the court below could, and no doubt did, assume from the evidence, which was ample for the purpose, that the mere filing of the buyer's acceptance, if such it was, did not bind the buyer, and that the sale was not complete until the acceptance was delivered in the ordinary course to the buyer; that the advice from the seller of the proposed sale, and not the quotation of grade and price from the buy-

er, constituted the offer, which must be delivered to the buyer' for acceptance. This construction given by the parties to the contract is obviously reasonable. It is a matter of common knowledge that the price of cotton constantly fluctuates from day to day, often with disastrous results to those dealing in that product, and nothing could be saner than the requirement of the purchaser that he would not be bound by his quotations unless he had notice of acceptances thereunder before the opening of another day's market, as seems to be the case here. Such being the intention of the parties to this contract, and that being their construction of its provisions, they would be bound by that construction.

[2] If the telegraph company had known of this contract, and required to act with reference to its provisions, it would not, of course, be bound by any secret modification of its terms by the parties to it. It did not, however, know of the contract, or its provisions or of the parties' construction thereof, and was in no way concerned therein. But in this instance it was advised of the meaning of the message delivered to it, and that a failure to transmit and deliver the message to the addressee at Houston by 8 o'clock of the day it was filed would result in appellee's loss of the proposed sale, and it was the duty of the company to use ordinary care in transmitting and delivering the message in view of this information. The jury found, upon sufficient testimony that it negligently failed in this duty, and that the gin company by reason thereof sustained the very damages the telegraph company had been advised would result from its default. Appellant's fourth and twelfth assignments of error, raising the questions here discussed, will, for the reasons given, be overruled.

We think the cause was fairly tried, and that the verdict and judgment were fully supported by the testimony, and, no reversible error being presented, the judgment will be affirmed.

Affirmed.